[Civ. No. 15692. First Dist., Div. One. Mar. 18, 1953.]

AMY TRUCHON, Petitioner, v. THOMAS A. TOOMEY, as Registrar of Voters, etc., Respondent.

Kenneth C. Zwerin for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Dion R. Holm, City Attorney (San Francisco), and Lawrence S. Mana, Deputy City Attorney, for Respondent.

BRAY, J.—Petition for writ of mandate to compel the San Francisco Registrar of Voters. to register petitioner to vote.

### QUESTION PRESENTED

Does article II, section 1, California Constitution, disfranchise a person who, having been convicted of a felony, has successfully completed his probation, and, under the provisions of section 1203.4 of the Penal Code, has been released from all penalties and disabilities resulting from the crime of which he was convicted?

### FACTS

Petitioner in 1946 pleaded guilty to violation of section 220, Penal Code (assault with intent to commit rape), a felony. He was admitted to probation conditioned upon serving 90 days in the county jail. May 14, 1951, he withdrew his plea of guilty and entered a plea of not guilty. The cause was dismissed and the record was expunged as provided in section 1203.4, Penal Code.

### WAS DEFENDANT "CONVICTED" WITHIN THE MEANING OF THE CONSTITUTIONAL PROVISION?

". . . no person convicted of any infamous crime, . . . shall ever exercise the privileges of an elector in this State . . ." (Const., art. II, § 1.)

". . . defendant . . . shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted." (Pen. Code, § 1203.4.)

In *Matter of Application of Westenberg*, 167 Cal. 309 [139 P. 674], it was held that all felonies are infamous crimes. "Crimes are infamous either by reason of their punishment or by reason of their nature. In the first class fall all

felonies, as the punishment therefor is imprisonment in the state prison.'' (P. 319.) Petitioner contends that as to crimes not infamous because of their nature but deemed felonies because punishable by imprisonment in the state prison, such crimes cannot be held infamous unless actually the defendant serves time in such prison, that it is not the possibility of imprisonment that makes the crime infamous but the actuality of it. He contends that the Legislature carried this logic into section 644 of the Penal Code, the habitual criminal act. There a person cannot be declared an habitual criminal, no matter how many previous convictions he has suffered, unless he actually has been confined in a state prison the requisite number of them. ■ We feel, however, that under article II of the Constitution a felony is an ''infamous crime'' and that the determination of the matter before us turns on the meaning of the word ''convicted,'' as there used.

While the Legislature has provided in section 1203.4 of the Penal Code for release from all disabilities, it there and elsewhere has provided certain exceptions. Thus, in the section itself, it is provided ''that in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted. . . .''

Section 309, Vehicle Code, provides that the termination of probation shall not affect any revocation or suspension of any license of the probationer and his prior conviction shall be considered for the purpose of suspending or revoking any license on the ground of two or more convictions.

Section 12011.5 of the Education Code provides that for the purposes of certain sections of that code, ''A plea or verdict of guilty or a finding of guilt by a court in a trial without a jury is deemed to be a conviction. . . .''

There are a number of cases in California considering the exceptions to the release from disabilities. On the effect of section 1203.4 the California cases have not been uniform. In *Meyer* v. *Board of Medical Examiners,* 34 Cal.2d 62 [206 P.2d 1085], the court in a 4 to 3 decision held that even though proceedings under section 1203.4 had been taken, there was a conviction supporting the board's suspension of the physician's license. It pointed out that it has been held that probation does not wipe out the conviction in the following respects: (1) It is a prior conviction as to subsequent convictions. (*People* v. *Hainline,* 219 Cal. 532 [28 P.2d

16]; *People* v. *Barwick,* 7 Cal.2d 696 [62 P.2d 590].) (2) It may be offered for impeachment purposes in a subsequent prosecution. (*People* v. *James,* 40 Cal.App.2d 740 [105 P.2d 947].) (3) It may be considered for the purpose of suspending a driver's license. (Veh. Code, § 309; *Ellis* v. *Department of Motor Vehicles,* 51 Cal.App.2d 753 [125 P.2d 521].) (4) In a second prosecution for failure to provide for a minor child not only the prior conviction may be raised ''but all matters inherent in such conviction were admissible in evidence. . . .'' (P. 67.) (*People* v. *Majado,* 22 Cal.App.2d 323 [70 P.2d 1015].)

''As the release of the 'penalties and disabilities' clause of the probation statute has been so qualified in its application, it does not appear that it was thereby intended to obliterate the record of conviction against a defendant and purge him of the guilt inherent therein (*cf. Sherry* v. *Ingels, supra,* 34 Cal.App.2d 632 [94 P.2d 77]) or to 'wipe out absolutely' and for all purposes the dismissed proceeding as a relevant consideration and 'to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him' (*People* v. *Mackey,* 58 Cal.App. 123, 130 [208 P. 135]). From this standpoint, appellant's theory that the import of the probation statute and the dismissal proceeding is to expunge the record of the crime (*Sherry* v. *Ingels, supra; People* v. *Mackay, supra*) cannot prevail.'' (*Meyer* v. *Board of Medical Examiners, supra,* 34 Cal.2d 62, 67.)

It is admissible in evidence in a civil proceeding to show that he pleaded guilty to the offense, as an admission against interest. (*Vaughn* v. *Jonas,* 31 Cal.2d 586 [191 P.2d 432].)

For purposes of impeachment of a witness by proof that he was convicted of a prior crime it has been held that the witness has been ''convicted'' even though his case is on appeal from that conviction (*People* v. *Ward,* 134 Cal. 301 [66 P. 372]); likewise, for purposes of pleading a former conviction (*People* v. *Clapp,* 67 Cal.App.2d 197 [153 P.2d 758].)

In *In re Phillips,* 17 Cal.2d 55 [109 P.2d 344, 132 A.L.R. 644], it was held that for purposes of disbarment an attorney was convicted even though the attorney had been released from penalties and disabilities by proceedings under section 1203.4, on the ground that the Legislature could not

infringe upon the judicial power of the court to discipline its own officers. The decision in the Meyer case was based upon that of the Phillips case. In those cases the court was dealing with the question of whether the Legislature intended to relieve from the penalties and disabilities imposed, the defendant's right to practice law or medicine, and held that it did not so intend. Moreover, in *Suspension of Hickman*, 18 Cal.2d 71 [113 P.2d 1], not mentioned in the Meyer case, it was held that suspension of an attorney's license to practice law on conviction of attempted grand theft, a felony, must be terminated because petitioner was given probation and later the charge was dismissed under section 1203.4. It was held (pp. 73, 74): ''. . . the criminal proceedings were suspended prior to and without the imposition of judgment and sentence and no judgment of conviction was ever entered . . . there is now no criminal proceeding pending against the petitioner. . . .''

It thus appears that in California as in New York the word ''conviction'' has been used with varying meanings.[1]

The interpretation of ''convicted'' in article II has never been made. However, a similar provision in the New York Constitution has. Section 1 of article 2 of the 1894 New York Constitution provided that the Legislature should ''enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crimes.'' The Legislature then provided that no person convicted of a felony might vote. In *People* v. *Fabian*, 192 N.Y. 443 [85 N.E. 672, 127 Am.St. Rep. 917, 18 L.R.A.N.S. 684][2] the New York Court of Appeals was required to construe the word ''convicted'' as it appeared in the constitutional provision as it applied to Fabian who had been found guilty of burglary in the first degree, a felony, but sentence suspended. The court pointed out that under the common law, witnesses who had been con victed of infamous crimes were disqualified from testifying, but were not deemed to have been thus convicted unless the record established the rendition of a judgment upon the verdict.[3] It then stated that the provision in the 1894 Constitution contemplating the disfranchisement of convicts was similar to that in both the preceding 1846 and 1822 Con-

[1] See *People* v. *Fabian, infra,* 192 N.Y. 443 [85 N.E. 672, 127 Am.St. Rep. 917, 18 L.R.A.N.S. 684].

[2] Approved in *Lewis* v. *Carter,* 220 N.Y. 8 [115 N.E. 19], and in *People* v. *Lawes,* 254 N.Y. 249 [172 N.E. 487], not dealing, however, with disfranchisement.

[3] See, also, *People* v. *Ward, supra,* 134 Cal. 301, 307, 308.

stitutions. Referring to the framing of the original Constitution of 1822 the court said (18 L.R.A.N.S. p. 686): "This disqualification of witnesses as a consequence of crime was one with which the courts at that day, and consequently the public, must have been most familiar, and it seems to me quite natural that the members of the constitutional convention should have had it in mind, and that, when they spoke of 'persons convicted,' they meant persons against whom a judgment of conviction had been rendered. It would hardly be reasonable to authorize the disfranchisement of a voter simply because a verdict had been found against him (upon which judgment might have been or might yet be arrested), and yet require proof that the verdict had been followed by a judgment in order to effect the disqualification of a witness.

"Upon reason, apart from authority, it will hardly be contended that a man should be deprived of the right of suffrage by a less conclusive judicial pronouncement against him than is required to disqualify him or affect his credibility as a witness. . . . In discussing the rule which thus renders a witness incompetent, in the case of *Faunce* v. *People*, 51 Ill. 311, the supreme court of Illinois has said: 'An examination of the adjudged cases in the various states of the Union, where substantially the same laws are in force, will show that it is not the commission of the crime, nor the verdict of guilty, nor the punishment, nor the infamous nature of the punishment, but the final judgment of the court, that renders the culprit incompetent. It is true that writers and judges have loosely said that a party is convicted on the finding of a verdict against him. It is true in a sense that he has been convicted by the jury, but not until the judgment is rendered is he convicted by the law; and the statute only, like the common law, refers to the conviction imposed by the law.' It may readily be conceded that the words 'convicted' and 'conviction' are often employed with reference to the verdict in a criminal case, as distinguished from the judgment, without affecting the validity of this argument as to the meaning of 'convicted' in the constitutional provision under consideration and in the legislative enactments adopted in pursuance thereof."

The court then discusses the fact that the word 'conviction' in the statutes of that state has been used with varying meanings, and states: "This use of the term, with varying meanings, even in the same statute, and extending right down to the immediate present, certainly demonstrates that there is no fixed signification which the courts are bound to adopt,

and leaves us the utmost freedom of inquiry as to what was intended when the legislature was empowered to disfranchise convicted citizens. . . . 'where disabilities, disqualifications, and forfeitures are to follow upon a conviction, in the eye of the law it is that conviction which is evidenced by sentence and judgment; and that, where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended or postponed temporarily or indefinitely, so, also, the indirect consequences are likewise postponed.' '' (The above statement well applies to the California cases on the effect of section 1203.4.)

After considering many cases in which the word ''convicted'' is construed and pointing out that the word has been given both a narrow and a broad interpretation, the court holds that for the imposition of the disability of disfranchisement the word must be interpreted in its broad sense of verdict, or plea, of guilty followed by judgment and sentence.

In *In re Ringnalda,* 48 F. Supp. 975, the petitioner applied for naturalization. Objection was made that he had been convicted in Orange County, California, of a felony, negligent homicide (Veh. Code, § 500). He had been given one year probation at the end of which time the case had been dismissed in proceedings under section 1203.4, Penal Code. In overruling the objection the court stated that the view which obtains in federal courts is (p. 977) ''that when we speak of a 'conviction' from which disabilities flow, we refer to a conviction followed by the imposition of a sentence. which is the judgment in a criminal case. And where imposition of the sentence is stayed, there is no final judgment.'' The court states that the probation period is not a sentence, and that there is a difference between the *fact* of conviction and the *judgment* of conviction.

*In re Anderson,* 34 Cal.App.2d 48 [92 P.2d 1020], involved the construction of article VII of the Constitution, which empowers the governor to grant pardons ''after conviction.'' The petitioner was found guilty of a felony by a jury. Before sentence the governor pardoned him. The court held that the word ''conviction'' in that article should be accorded its normal popular meaning and ''should be interpreted as meaning the verdict of guilty, and that sentence and judgment are not necessary to constitute a conviction.'' It cited a number of out-of-state cases interpreting the same word in the pardon section of the particular state constitution. It also relied on *Ex parte Brown,* 68 Cal. 176 [8 P. 829],

construing the word "conviction" in the statute permitting admission to bail pending appeal, where application for bail was made after verdict but before sentence and judgment; *People* v. *Ward, supra,* 134 Cal. 301, construing "convicted" in section 2051, Code of Civil Procedure, permitting impeachment of a witness convicted of a felony where the witness had been found guilty by a jury but not sentenced; *McKannay* v. *Horton,* 151 Cal. 711 [91 P. 598, 121 Am.St.Rep. 146, 13 L.R.A.N.S. 661], where the specific question was whether after verdict and judgment but while an appeal was pending a person was "convicted of a felony" within the meaning of a charter provision providing for removal from office in case of such conviction. The court held he was. In the Anderson case the court distinguished the ruling in *In re Riccardi,* 182 Cal. 675 [189 P. 694], where it was held by a 4 to 3 decision that during pendency of an appeal, there was no such conviction as would justify disbarment of an attorney by stating (p. 54): "That case, while recognizing that the ordinary meaning of the term 'conviction' does not include judgment or sentence, held, because of the peculiar consequences that would follow from a contrary construction under the facts of that case, that the term must be given a technical meaning."

One of the out-of-state cases referred to in the Anderson case, *supra,* is *Commonwealth* v. *Lockwood,* 109 Mass. 323 [12 Am.Rep. 699], where, although it was held that for purposes of pardon "conviction" in the Massachusetts Constitution meant return of a guilty verdict by a jury, the judge called attention "to the broader meaning which attaches to the term when it is employed for disqualifying purposes, precisely as it seems to me the word 'convicted' is employed in the constitutional provision and legislation before us in the present case." (*People* v. *Fabian, supra,* 18 L.R.A.N.S. pp. 686-687.)

The word "conviction" obviously has two meanings, one narrow and the other broad, as under the common law, the king could pardon at any time, even prior to trial.[4] ▆▆ The provision in article VII, section 1, of our Constitution[5] restricting the pardoning power of the governor to "after conviction" is, of course, a limitation of the power to pardon. Therefore, in construing such limitation, the word "conviction" must be interpreted in its narrowest sense. Also,

[4]See Jones' Blackstone, vol. 2, p. 2572, § 381, and p. 2647, § 449.
[5]It was also in the Constitution of 1849, art. V, § 13.

whatever situation exists that requires that a pardon be granted, likewise requires that it be applied at the earliest possible moment, within the limitation imposed. ▇ ▇ On the other hand, when considering the impositions of penalties and disabilities, particularly such a serious disability as that of disfranchisement, it is important that such imposition be made only when the proceeding causing it to be imposed is finally completed. Just as in 1822 when the New York Constitution was adopted, the people of New York had in mind as set forth in *People* v. *Fabian, supra,* a broad definition of the word ''conviction,'' in the disfranchisement section, so, too, must the people of California have been similarly minded when they placed in the Constitution of 1849 practically the same provision. (Art. II, § 5, Const. of 1849.)

In *In re Anderson, supra,* 34 Cal.App.2d 48, we pointed out that in *In re Riccardi, supra,* 182 Cal. 675, ''because of the peculiar consequences that would follow'' from a narrow interpretation of the word ''convicted,'' in considering the disbarment of an attorney before his conviction became final, the court was required to give the word a broad interpretation. In view of the serious consequences which would follow here from a narrow interpretation, the broad one is required.

Thus, there is no real conflict between the decision in *In re Anderson, supra,* and ours. There, because the limitation of the pardoning power was being considered, the philosophy of the narrow interpretation of that limitation was necessarily applied. In our case, as the imposition of a serious disability is being considered, the philosophy of the broad interpretation must necessarily be applied.

The attorney general suggests that our interpretation would result in the situation that a person on probation would continue to be entitled to vote and that neither the people nor the Legislature intended this result. Fundamentally, there does not appear anything wrong in not taking away the franchise of a person on probation who is behaving in such manner that on the termination of his probation by proceedings under section 1203.4 he would be entitled to continue to vote. If he fails to fulfill the terms of his probation it can be revoked and then because of sentence, the constitutional inhibition would apply.

In 1943 the Legislature adopted a procedure for restoration of rights and application for pardon. (Pen. Code, § 4852.01 et seq.) In section 4852.17 it provided that a pardon by the governor entitles one to exercise all ''civil and political rights

of citizenship, including but not limited to: (1) The right to vote . . ." The attorney general points out that the probation statutes contain no such provision, and contends, therefore, that it appears that the Legislature intended that only a pardon can restore the right to vote. We fail to follow this reasoning. In the first place, it is the Constitution and not the Legislature which denies the right to vote. Secondly, we are dealing with the question of the taking away of that right, not its restoration. Thirdly, as pointed out before, the philosophy concerning pardons is different from that concerning the imposition of disabilities. Fourthly, section 4852.01 et seq. deal only with pardons granted after a person has been convicted of a felony and "released from the State prison or other State institution or agency to which he was committed . . ." (Pen. Code, § 4852.01.) Fifthly, the exceptions to the removal of penalties and disabilities which the Legislature expressly imposed left very few from which a probationer could be relieved. If it be held, contrary to any expression, that the Legislature also intended to except restoration of the right of franchise, a proceeding under section 1203.4 would restore very little to the probationer.

In 22 Southern California Law Review 476, there is an interesting article upon the effect of section 1203.4 in the respects here considered. It points out that the Legislature intended to release a defendant from all civil penalties and disabilities, except those specifically excepted, and disbarment. Restoration of franchise rights is not excepted. The disbarment exception has been made by the courts on the principle that the Legislature has no power to infringe upon the inherent power of the courts to discipline its officers and therefore the section will not apply. It points out, too, "The general rule where conviction results in civil penalties and disabilities is that conviction takes the technical meaning of verdict plus judgment." (P. 477; see, also, 23 So.Cal.L.Rev. 109, and 2 Stan.L.Rev. 221.)

The pleadings concede that except for the claimed disability petitioner is a qualified elector of the City and County of San Francisco. Let the peremptory writ of mandate issue directing respondent to register petitioner as an elector of the City and County of San Francisco, State of California.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 14, 1953.