[Civ. No. 18048.   First Dist., Div. One.   May 2, 1958.]

RALPH T. KELLY, Petitioner, v. MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Kenneth C. Zwerin for Petitioner.

Albert M. Bendich, as Amicus Curiae on behalf of Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—QUESTION: Does the respondent court have jurisdiction to proceed with the trial of petitioner upon a complaint that charges a violation of section 290 of the Penal Code (failure to report a change of address) despite the fact that prior to this alleged failure the conviction (violation of Pen. Code, § 288a) upon which the section 290 charge is based was set aside and petitioner "released from all penalties and disabilities" pursuant to the provisions of section 1203.4 of the Penal Code?*

In such a state of facts does such a complaint charge the violation of a public offense? Are the registration requirements of section 290 among the "all penalties and disabilities" from which the convicted person is *thereafter* "released" when, having been granted probation, he fulfills the conditions thereof, as provided in section 1203.4? We think they are, and that the complaint does not charge the violation of a public offense.

A person convicted of any of the offenses mentioned in section 290 is by the provisions of that section required to register with the appropriate law enforcement agency. Registration consists of " (a) a statement in writing signed by such person, giving such information as may be required by the State Bureau of Criminal Identification, and (b) the fingerprints and photographs of such person." Three days after the registration, the registering law enforcement agency must forward the statement, the fingerprints and photographs to the State Bureau of Criminal Identification and Investigation.

The duty thus to register must be performed by the convicted person within a limited period of time after discharge or parole from the penal or correctional institution in which incarcerated as a result of the conviction. If committed to a state hospital as a sexual psychopath, he must register upon release from the hospital. The duty to register also rests upon him if and when he is released upon probation or is discharged upon the payment of a fine.

---

*The petition herein alleges these facts in detail and the return of the respondent court expressly admits them.

July 12, 1956, upon plea of guilty, petitioner was sentenced to the county jail, execution of sentence was immediately suspended, and petitioner placed upon probation.

September 18, 1957, petitioner, having fulfilled the terms of his probation, changed his plea to not guilty, the accusation was dismissed and petitioner was released from all penalties and disabilities resulting from the conviction.

If any such person changes his residence address he must within 10 days report his new address to the law enforcement agency with which he last registered. Such agency must within three days forward the information to the state bureau which in turn must forward appropriate registration data to the local law enforcement agency having jurisdiction of the new place of residence. Failure to observe any of these requirements subjects the convicted person to the penalties of a misdemeanor. Also, conviction of a violation of section 290 renders a person liable to inquiry as to whether he is a sexual psychopath. (Welf. & Inst. Code, § 5501.)

The duty to reregister upon changing one's place of address is a continuing duty, a burden which the convicted person carries with him until his dying day. Being thus severely limited in his freedom of movement and continuously under police surveillance, all stemming from the conviction which has been set aside, the conclusion seems irresistible that this registration requirement is one of the "penalties and disabilities resulting from the offense or crime of which he has been convicted," from which, as a faithful and successful probationer, he is *thereafter* "released" by the mandate of section 1203.4.*

A persuasive discussion and interpretation of the expression "penalities and disabilities" as used in this section we find in *People* v. *Mackey*, 58 Cal.App. 123, 130 [208 P. 135] : "Webster defines the word 'penalty' in part, as 'Penal retribution; ... the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense; ... Disadvantage, loss, or hardship due to some action, esp. to a transgression or error.' That lexicographer gives the following definition of 'disability,' quoting it in full: 'State of being disabled; deprivation or want of ability; absence of competent physical, intellectual, or moral power, means, fitness, or the like; an instance of such want or deprivation. *Disabilities* to perform what was covenanted. *Milton.* Chatham refused to see him, pleading his *disability. Bancroft.* Want of legal qualification to do a thing; legal incapacity, incompetency, or disqualification; also, an instance or cause of such incapacity.' ... The two words are together to be given a broad and far-reaching construction

---

*This release obviously operates prospectively not retroactively. It does not necessarily revoke or expunge the record of any registration or reregistration that took place during the probationary period.

because the legislature has coupled with their use the mandate that, where a convicted felon who has been admitted to probation has passed the period of probation, 'the court shall thereupon dismiss the accusation or information against such defendant.' "

So much for the words "penalties and disabilities." We are mindful of the fact that the words "penal" and "penalty" have a variety of meanings or shades of meaning, according to the subject dealt with and the context in which the words are used. (See 23 Am.Jur. 622, § 27.) Here, the context suggests that perhaps the Legislature had *criminal* penalties and disabilities in mind. Section 1203.4 speaks of "penalties and disabilities *resulting from* the offense or crime of which he has been convicted." (Emphasis added.) Does this expression suggest, perhaps, that section 1203.4 has reference to *criminal or quasi-criminal* penalties, penalties *imposed for punishment or prevention of crime*, such as imprisonment, fine, posting of a bond to keep the peace, or registration and continuous and lifelong reregistration with the state and local police? This question is important in the current inquiry because of the legislative and judicial history of section 1203.4.

The Legislature from time to time has enacted statutes expressly narrowing the scope of "all penalties and disabilities resulting from," in each case limiting the exclusion to a specific type of situation. Originally, the subject matter of section 1203.4 occurred as a subdivision of section 1203 of the Penal Code. In 1927 the proviso which permits a prosecutor to plead and prove the prior conviction in a subsequent prosecution for any other offense was added to the subdivision. (Stats. 1927, ch. 770, p. 1493, subd. (4), at p. 1496.) In 1935 that subdivision (including the proviso) was lifted out of section 1203 and made into a separate section numbered 1203.4. (Stats. 1935, ch. 604, p. 1706 at 1709.)

The other enactments narrowing the scope and application of section 1203.4 deal with the type of person who after investigation and examination is found and declared duly qualified to practice a given profession or calling or to conduct a certain type of operation that calls for a measurable degree of proficiency; specifically, drivers of motor vehicles, attorneys at law, physicians and surgeons, and public school teachers. The regulatory statutes concerning such persons subject them to disciplinary action (suspension or revocation of license or employment) for various causes including conviction of cer-

tain types of crime. Those statutes have been amended to make it clear that the indicated disciplinary action when taken is not affected by an order of release made pursuant to section 1203.4. (§ 309 of the Veh. Code, added thereto in 1939, relating to the suspension or revocation of a license to drive a motor vehicle; § 6102 of the Bus. & Prof. Code as amended in 1941, concerning the suspension or revocation of a license to practice law; §§ 2383 and 2384 of the Business and Professions Code, as amended in 1951, in respect to the disciplining of a physician and surgeon; and §§ 12011.5, 12011.7, 12107, 12756, 12785, 13001.3 and 14002.3 [particularly § 12011.5] as added to the Education Code in 1952, relating to the suspension and revocation of teachers' credentials and the suspension and discharge of public school teachers.)

Legislation of this type might conceivably reflect a legislative interpretation of section 1203.4 to the effect that, but for the insertion of such exclusionary provisions in these several regulatory statutes, the suspension or revocation of a license or the suspension or discharge of a public school teacher is a "penalty" or "disability" within the meaning of those words as used in section 1203.4. Such a view loses much of its logic when we consider these amendments in the light of certain judicial decisions. The 1939 addition of section 309 to the Vehicle Code must be appraised in the light of the fact that there was then pending a case, involving events that occurred in 1938, which culminated in a decision that such was the effect of a section 1203.4 release order upon the conviction of the holder of a driver's license. (*Sherry* v. *Ingels*, 34 Cal.App. 2d 632 [94 P.2d 77], decided in September, 1939.) The addition of section 309 was a legislative rejection of the potentially pending judicial interpretation. At the very least it may be said that while this particular legislative act, standing alone, may not be vividly illuminative of the legislative intent, it is not out of line with the clear import of later enactments concerning section 1203.4, particularly the 1941 amendment of the State Bar Act and the 1951 amendment of the State Medical Practice Act. In respect to each of these amendments the Supreme Court had previously decided that the suspension or revocation of a license to practice law or to practice medicine and surgery was not a "penalty" or "disability" within the purview of section 1203.4. (*In re Phillips* (Jan., 1941), 17 Cal.2d 55 [109 P.2d 344, 132 A.L.R. 644], construing and applying section 6102 of the State Bar

Act as it read prior to its 1941 amendment; *Meyer* v. *Board of Medical Examiners* (1949), 34 Cal.2d 62 [206 P.2d 1085], in relation to the discipline of physicians and surgeons.) The reasoning of the court in the Phillips and the Meyer cases, it would seem, is that "penalties and disabilities" as used in section 1203.4 have reference to *criminal* penalties and disabilities *or something akin thereto* and that the disciplining of a person licensed to practice a profession or calling is for the protection of the public in the exercise of the police power, not for the purpose of "punishing" the licensee (there are other laws for that), a function and a proceeding which is neither criminal nor quasi-criminal in character.

There is considerable support for such a view of that type of disciplinary proceeding. (*Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, 537 [110 P.2d 992] ; *Bold* v. *Board of Medical Examiners*, 135 Cal.App. 29, 34 [26 P.2d 707] ; *Traxler* v. *Board of Medical Examiners*, 135 Cal.App. 37, 39 [26 P.2d 710] ; *Stuck* v. *Board of Medical Examiners*, 94 Cal.App. 2d 751, 757 [211 P.2d 389].) "The object of an administrative proceeding aimed at revoking a license is to protect the public, that is, to determine whether a licensee has exercised his privilege in derogation of the public interest, and to keep the regulated business clean and wholesome. Such proceedings are not conducted for the primary purpose of punishing an individual. (See cases collected 2 Cal.Jur.2d 169, § 87, at p. 170.) Hence, such proceedings are not criminal in nature." (*Cornell* v. *Reilly*, 127 Cal.App.2d 178, 184 [273 P.2d 572].)

It is a fair inference that when the Legislature amended the State Bar Act and the Medical Practice Act so as to codify the rulings in the Phillips and the Meyer cases, it indicated an acceptance of or concurrence in the interpretation of section 1203.4 upon which those rulings were based.

But that interpretation, those rulings and those amendments do not affect our problem save to emphasize, by contrast, the fact that the "penalties and disabilities" of the registration and reregistration requirements of section 290 are criminal in character. To illustrate, until the enactment of section 290, a person for the first time violating subdivisions (1) or (2) of section 311, or subdivision (5) of section 647, or subdivision (1) of section 647a of the Penal Code, incurred the penalty of a fine not exceeding $500 or imprisonment in the county jail for not more than six months, or both. Section 290 added a life sentence of compulsory police registra-

tion and reregistration. That, clearly, is the imposition of a criminal penalty in the strictest and narrowest sense of that term.

Accordingly, we have a seeming conflict between these two statutes. Section 1203.4 releases ''thereafter'' all penalties and disabilities. Section 290 by imposing the continuing duty to reregister upon effecting a change of address does not *expressly* recognize any such release. Does section 290, as the later enactment, prevail? We think not.

A means of reconciling this conflict is furnished by the separate and distinct policies which these two statutes were respectively designed to effectuate. One deals with probation and is designed to foster rehabilitation by giving the probationer an opportunity to erase for the future the legal consequences which normally flow from a conviction. The other requires registration of a person convicted of any of the offenses enumerated, upon the theory it would seem that such offenders are apt to repeat and therefore should be kept under close police surveillance at all times. It is a fair inference that an offender found deserving of probation is not likely to be in need of further police surveillance if he responds to the confidence reposed in him as a probationer and faithfully fulfills the terms and conditions of his probation, designed to impress upon him a keen awareness of his obligations to society and induce him to exert every effort to develop and prove his ability to meet and discharge those obligations and remain at large without further police surveillance.

In short, the fair intendment of these two statutes when read together is that conviction denotes a need for registration and police surveillance when the convicted person is allowed to return to society, whether after serving a sentence or upon the granting of parole or when released upon probation prior to the imposition or the execution of a sentence of imprisonment. But in the case of the probationer who demonstrates his ability to go straight, upon his own, by faithfully fulfilling all of the terms and conditions of his probation, the need for further surveillance and registration terminates upon his release pursuant to the sanction of section 1203.4.*

A word should be said concerning the state's contention that section 290 should prevail upon the theory that it is a special and 1203.4 is a general statute. They are not in that

---

*Other statutes deal with the rehabilitation of a convict who returns to society upon serving his sentence or when released upon parole. (See 37 Cal.Jur.2d 109-133; 39 Cal.Jur.2d 718-737.)

category. They do not meet the test for the rule which the state invokes, declared in *In re Williamson*, 43 Cal.2d 651, 654 [276 P.2d 593], in these words: " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute . . .' " Section 1203.4 deals with all probationers, including those who have committed none of the offenses mentioned in section 290. In addition, section 290 applies to some convicted persons who are ineligible for probation as well as to some who are eligible. Clearly, the rule invoked does not apply.

The parties have given considerable attention to the applicability or inapplicability of our holding in *Truchon* v. *Toomey*, 116 Cal.App.2d 736 [254 P.2d 638, 36 A.L.R.2d 1230], interpretive of the word "conviction" as used in section 1 of article II of the Constitution, relating to loss of the elective franchise. We perceive no similarity, no conflict, and no problem. In the Truchon case we pointed out that the word "conviction" has been used in criminal statutes with varying meanings. As used in the constitutional provision there involved we held that "conviction" referred to a judgment which remained final, thereby differing from a mere plea or verdict of guilty. Here we are considering the use of the word "conviction" as it appears in two statutes. Section 290 uses it in both senses: After judgment, in respect to the convict who has served his sentence or who is released upon parole; during the suspension of imposition or execution of sentence (see Pen. Code, § 1203.1), in relation to the probationer. Section 1203.4, because it deals with the probationer, has reference to his status as a convicted person during the period of suspension of imposition or execution of sentence.

We entertain no doubt that prohibition is a proper remedy. The respondent court has already determined, erroneously, that it has jurisdiction and will proceed with the trial unless restrained. The petitioner alleges and respondent admits that the respondent court "threatens to, and will unless prohibited by this [district] court [of appeal], proceed with the trial of petitioner upon the charge of violating Section 290 of the Penal Code," despite the fact that, as we have found, the complaint in question charges no public offense.

Our conclusion that the reregistration provisions of section 290 are not applicable to the petitioner upon the basis of the facts here presented, makes it unnecessary to consider certain

questions counsel have discussed in respect to the constitutionality of that section.

Let a peremptory writ of prohibition issue.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 25, 1958.