**James Edward KELLY, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 19340.**

United States Court of Appeals
Ninth Circuit.

June 20, 1965.

Ely, Circuit Judge, dissented.

Sidney Broffman, Los Angeles, Cal.,
for petitioner.

Francis C. Whelan, U. S. Atty., Donald
A. Fareed, Asst. U. S. Atty., Chief, Civil
Section, James R. Dooley, Asst. U. S.
Atty., Los Angeles, Cal., for respondent.

Before BARNES and ELY, Circuit
Judges, and PENCE, District Judge.

BARNES, Circuit Judge:

This is a petition to review an order
of deportation affirmed by the Board of
Immigration Appeals. We have jurisdic-
tion pursuant to § 1105a of Title 8,
United States Code.

The sole issue here involved is wheth-
er petitioner has "at any time * * *
been convicted" within the contempla-
tion of 8 U.S.C. § 1251(a) (11),[1] after
conviction and sentence by the courts of
the State of California for violating
§ 11531 of the Health and Safety Code
(possession or sale of marihuana), when
a so-called "expungement" of the convic-
tion has taken place under § 1203.4 of the
California Penal Code.[2]

---

1. Title 8 U.S.C. § 1251(a) (11) (Section
241(a) (11)) of the Immigration and
Nationality Act reads in pertinent part:
"(a) Any alien in the United States
* * * shall, upon the order of the At-
torney General, be deported who—
(11) is, or hereafter at any time * * *
has been convicted of a violation of * * *
any law or regulation relating to the il-
licit possession of or, traffic in narcotic
drugs or marijuana, or who has been con-
victed of a violation of * * * any law
or regulation governing or controlling the
* * * sale, exchange, dispensing, giving
away * * * of * * * marijuana
* * *."

2. Section 1203.4 of the Penal Code of the
State of California reads in pertinent
part:
"Every defendant who has fulfilled the
conditions of his probation for the en-

tire period thereof, or who shall have
been discharged from probation prior
to the termination of the period there-
of, shall at any time thereafter be per-
mitted by the court to withdraw his
plea of guilty and enter a plea of not
guilty; or if he has been convicted after
a plea of not guilty, the court shall set
aside the verdict of guilty; and in either
case the court shall thereupon dismiss
the accusations or information against
such defendant, who shall thereafter be
released from all penalties and disabili-
ties resulting from the offense or crime
of which he has been convicted * * *;
provided, that in any subsequent prose-
cution of such defendant for any other
offense, such prior conviction may be
pleaded and proved and shall have the

We have withheld decision in this case pending the determination by another panel of this court of the appeal in Maria Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804, decided April 28, 1965. Decision therein was delayed pending the Supreme Court decision (as to jurisdiction) in Giova v. Rosenberg (decided October 26, 1964) 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed. 90. The Garcia-Gonzales case is substantially similar to this case on its facts, except that it involved a conviction under §§ 11500 and 11501 of the California Health and Safety Code (the possession or sale of heroin).

For the reasons and the many cases cited in Garcia-Gonzales, supra, we hold that it was the intention of the Congress not to recognize state "expungements" of the conviction of aliens for narcotics violations, so as to permit such violators to escape deportation.

It is the opinion of the Attorney General of the United States that the intention of Congress was to use the words " 'has been convicted' in the normal sense in which the term is used in Federal law." Matter of A——— F———, 8 I. & N. Dec. 429, 445–446. To permit each state to make its own definition of what the Congress intended to mean by the language "at any time has been convicted" would "make the deportability of the alien depend on the vagaries of state law." (Idem.) The panel of this court sitting in Garcia-Gonzales, supra, agreed with the Attorney General, as do we.

On the basis of the foregoing authority, the petition to review is denied.[3]

ELY, Circuit Judge (dissenting):

In reaching its harsh conclusion, the majority relies upon Maria Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804 (9th Cir. 1965), recently heard and decided by an-other panel of our court. That panel's decision rests primarily upon an opinion of the Attorney General, Matter of A——— F———, 8 I. & N. Dec. 429. I do not agree with that opinion; consequently, I disagree with our court's decisions in Garcia-Gonzales and in the case at bar.

These are cases involving a problem of first impression, and the results work cruel consequences, not only to the two aliens directly concerned, but also to others who may become involved in a single violation of the law and be deprived of further incentive and opportunity to struggle for self-improvement, rehabilitation, and worthily contributive citizenship.

Many decisions are cited by our court in Garcia-Gonzales; however, as the court recognized, "none of these cases decides the precise question here presented." It was said that the "principles" of some of the cited cases required the ultimate conclusion. I do not believe that these so-called "principles" are sufficiently persuasive to override an established principle of the Supreme Court of the United States which is opposed and which we are obliged to respect.

Mr. Justice Douglas, speaking for all of his Brothers as our court was reversed in another deportation case, said:

"We resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment or exile, Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10 [92 L.Ed. 17]. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that

same effect as if probation had not been granted or the accusation or information dismissed."

3. Counsel for petitioner has "preserved" a second point, made for the record only,

reliance upon which is precluded in this court by our previous rulings in Arrellano-Flores v. Rosenberg, 310 F.2d 118 (1962) and Gutierrez v. I. & N. Service, 323 F.2d 593 (1963).

Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." Fong Haw Tan v. Phelan, 333 U.S. 6, at 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948).[1]

Reiterating this principle, Chief Justice Warren has written,

"Although not penal in character, deportation statutes as a practical matter may inflict 'the equivalent of banishment or exile,' * * * and should be strictly construed." Barber v. Gonzales, 347 U.S. 637, 642, 74 S.Ct. 822, 825, 98 L.Ed. 1009 (1954).

While our court expressed awareness of this principle in Garcia-Gonzales, saying, "We are aware, too, that matters of doubt should be resolved in favor of the alien in deportation proceedings, because of the severity of the remedy invoked.", I sincerely believe that we gave no more than lip service to the doctrine. As emphasized, no decision bound us to the result which was reached there and here. In Garcia-Gonzales, the alien lady, who, according to the opinion, "has been a self-respecting, self-supporting member of the communities in which she has lived." has resided in our country for over forty years. In 1961, she pleaded guilty to a California charge of unlawfully possessing narcotics. The California court granted probation upon certain conditions, and following the expiration of her probationary period, she appeared before the California court and

was granted "expungement" under the provisions of Section 1203.4, California Penal Code. Now, our court has said that while it will respect California law, insofar as California law provided for the crime and the "conviction", it may not accord to California the same respect in the application of its statute or of its decisions in the interpretation of the effect of a subsequent procedure taken under a California statute of the same dignity as that which created the crime. Not only does the logic of this approach escape me, but it is also true, I believe, that such a pronouncement is opposed to a principle which was hitherto thought to have been quite well established. In Holzapfel v. Wyrsch, 259 F.2d 890 (3rd Cir. 1958), the court said, at page 891,

"In deportation cases where a state crime is involved we have to look to the law and procedure of the state to interpret what happened in the state courts * * *"

In Sawkow v. Immigration and Naturalization Service, 314 F.2d 34, 37 (3rd Cir. 1963), the court extended total respect to post-conviction procedures and determinations applied by the New Jersey courts which pertained to a crime for which the alien had been convicted in a New Jersey court. In discussing a contention of the Immigration and Naturalization Service, the court said,

"It urges, however, that if a judgment of conviction is vacated for the purpose of avoiding deportation, a subsequent recommendation is ineffectual. This argument misses the mark, for no contention is made that

1. In Fong Haw Tan, the court was concerned with the interpretation of Section 19(a) of the Immigration Act of 1917, as amended, which provided, in substance, that an alien "sentenced more than once" to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude committed after his entry should, subject to certain exceptions, be deported. The Supreme Court held that an alien convicted of the murder of two victims under two separate counts of one indictment and sentenced to life imprisonment under each of the convictions was not

subject to deportation under the provisions of Section 19(a). In reviewing the legislative history, Mr. Justice Douglas, quoting from 53 Cong.Rec. 5167, wrote that the Section "was aimed at the alien 'who is a criminal at heart, a man who is guilty of a second offense involving moral turpitude and for the second time is convicted.'" It is just as clear, from the provisions of the California expungement statute itself, that its purpose was to offer another chance to one believed by a California court, upon the basis of proved rehabilitation, to have earned the benefits of the act.

the state court either exceeded its jurisdiction or abused its discretion in vacating the plea of *non vult* together with the judgment of conviction, and subsequently dismissing the indictment. Thus, the action of the state court is concededly valid. That being so, the original judgment is as much a nullity as if the grand jury had never returned an indictment."

As we have seen, Mrs. Garcia-Gonzales, now at middle age, is to be deported and estranged from an environment in which she has lived and worked and been "a self-respecting, self-supporting member" for over forty years.

Here, however, we are immediately concerned with James Edward Kelly, now twenty-eight years of age. Twelve years go, when he was only sixteen, he was, with his widowed mother, admitted to our country for permanent residence. He has served in the armed forces of the United States. On March 2, 1963, he pleaded guilty in a California court to a California charge pertaining to marihuana. The California court *suspended the proceedings without entry of judgment* and, presumably, upon the basis of Kelly's history and promise, granted probation for a period of three years upon condition that Kelly be confined in a county jail for six months less the period in which he had already been in custody. On October 8, 1963, there was entered by the same California court which had accepted the plea and granted probation the following order:

"The motion of the defendant herein to terminate probation, to set aside the plea of Guilty, to enter a plea of Not Guilty, and to dismiss the complaint herein, having come on regularly before this Court on October 8, 1963, in Department 12 thereof, Honorable Judge Harry Neubarth presiding, and the Court, having heard and considered the evidence.

IT IS HEREBY ORDERED that the sentence of probation of defendant be, and the same is hereby, terminated, that the plea of Guilty heretofore entered by defendant to the charge of violation of Section 11531 of the Health and Safety Code of California is set aside and a plea of Not Guilty thereto is entered and the complaint dismissed, pursuant to Sections 1203.3 and 1203.4 of the Penal Code of California."

Kelly was charged in a California court by California authorities with having violated a California law. The same California court which, in the beginning, accepted a plea of Guilty subsequently entered an order making it unmistakably clear that the previous plea of Guilty was "set aside and a plea of Not Guilty * * * entered and the complaint dismissed, * * * *". If we are to resolve "matters of doubt * * * in favor of the alien" as we said that we should do in Garcia-Gonzales, then I would hold, in effect, as did the Third Circuit in Sawkow that "the original judgment is as much a nullity as if the grand jury had never returned an indictment." But "no" said our court in Garcia-Gonzales and say the majority here, there are "principles" of California law which are oppositely guiding. Let us examine some of these "principles", for California authorities tell us that we have misunderstood or misapplied them. In the first place, it is doubtful, although our court has repeatedly held to the contrary, that a defendant who has pleaded Guilty in a California court which has granted him probation and suspended the proceedings without entry of judgment, such as did Kelly in the instant case, has even been "convicted." In People v. Banks, 1959, 53 Cal.2d 370, 1 Cal.Rptr. 669, 348 P.2d 102, the Supreme Court of California wrote, at page 386, 1 Cal.Rptr. at page 680, 348 P.2d at page 113,

"By contrast, the defendant whose guilt has been established * * * but who has not been sentenced * * i. e., where probation has been granted and the proceedings have been suspended without entry of judgment, is subject to no disabilities whatsoever except those specifically declared by some other pro-

vision of law or affirmatively prescribed by the court as terms or conditions of probation. *The probationer in the latter case still retains his ordinary civil rights, * * * "* (Emphasis added.)

More recently, the California Supreme Court said:

" * * * if probation is granted without pronouncement of sentence the probationer retains his ordinary civil rights."

In re Trummer (1964), 60 Cal.2d 658, 36 Cal.Rptr. 281, 388 P.2d 177.

Criticizing our court for its refusal to respect California's so-called "dual definition of conviction", a California jurist has recently written,

"In sustaining the deportation order, the Ninth Circuit Court relies principally upon Banks (supra, 53 Cal.2d 370, 1 Cal.Rptr. 669, 348 P.2d 102), for the proposition that a plea, finding or verdict of guilty without judgment is a 'conviction' under California law. The court fails to recognize, however, that Banks holds that this type of conviction has no effect on civil rights and privileges. Here, defendant's privilege to remain in this country was clearly a civil right.

See In re Ringnalda (1943) D.C., 48 F.Supp. 975, where Judge Yankwich reached the opposite conclusion." Holland, "Conviction" Defined, 40, Journal of the State Bar of California, 36, at 47.

I reluctantly recognize the binding force of the critized precedents of our court and thus have this day concurred in our opinion in Ganzalo Ramirez-Villa v. Immigration and Naturalization Service, 347 F.2d 985 (9th Cir. 1965). Here, however, we not only have a case wherein proceedings were suspended and no entry of judgment was made, we have a case in which the California court, under the authority of California statutes, has, by formal order, set aside a plea of Guilty, accepted a plea of Not Guilty, and dismissed the complaint.

In passing, I point out that when our court, in Garcia-Gonzales, expressed "doubt that the California legislature * * * could, release petitioner from penalties or disabilities imposed by federal law," it ignored the fact that California was not enforced by the Federal Government to enact legislation creating a specific crime. Moreover, it apparently overlooked certain language of our own court in Hernandez-Valensuela v. Rosenberg, 304 F.2d 639, 640 (9th Cir. 1962), wherein Judge Merrill wrote " * * * there was no adjudication, *which would be recognized as final in Massachusetts*, that petitioner had committed any crime." (Emphasis added.)

If I am correct in my view that since the petitioner was charged with a California crime and since the proceedings in connection with the charge were had in a California court, we should look to the California law to ascertain the effect of the subsequent dismissal of the charge by the California court, then certain California cases are of particular significance. One of these is Truchon v. Toomey, 116 Cal.App.2d 736, 254 P.2d 638, 36 A.L.R.2d 1230. There, the accused was charged with a felony and was placed on probation with no judgment of conviction having been entered, the same procedure which was applied with reference to the petitioner here. The "conviction" was expunged, as here, and the question was whether or not there had been a loss of voting eligibility under the California Constitution which provides that " * * * no person convicted of any infamous crime * * * shall ever exercise the privileges of an elector in this State * * * ". The court held that release under the expungement statute effected restoration of the right to vote, and this decision of the intermediate California appellate court was expressly approved by the Supreme Court of California in Stephens v. Toomey, 51 Cal.2d 864, 338 P.2d 182.

In Kelly v. Municipal Court, 160 Cal. App.2d 38, 324 P.2d 990, there was an alleged violation of Section 288(a), California Penal Code, which defined a

morals offense. Under Section 290, California Penal Code, conviction under the particular charge required registration and reregistration as a morals offender. The defendant was sentenced to the county jail but execution of the sentence was suspended and probation granted. Upon fulfillment of the period of probation, the verdict was set aside, and pursuant to the expungement statute, the defendant was granted release from all penalties and disabilities. The court upheld the former defendant's contention that since his so-called conviction had been expunged, he was not required to comply with the registration requirements.

In People v. Taylor, 178 Cal.App.2d 472, 3 Cal.Rptr. 186 (1960), the defendant was found to have possession of a pistol and was charged with violating Section 12021 of California's Penal Code which prohibits possession of concealed firearms by one "who has been convicted of a felony under the laws * * * of the State of California * * *" Theretofore, defendant, following a charge of attempted robbery, had been granted probation with the proceedings suspended and no sentence imposed. Following the expiration of the probationary period, the defendant had applied for, and obtained, relief under the expungement statute. The court held that the defendant was not subject to the second charge, the record of the prior violation having been "wiped clean" by the obtaining of the dismissal under the expungement statute and the consequent

release from all "penalties and disabilities." The court said,

"The clear intent of the probation sections of the Penal Code and especially of section 1203.4 is to effect the complete rehabilitation of those convicted of crime. The record of one released under this section is wiped clean, subject only to reinstatement when, and only when, the person commits another and subsequent crime, or for purposes of those exceptional situations discussed supra."

By the statute's express terms, its benefits are denied to one "who commits another and subsequent crime", and the "exceptional situations" mentioned by the court are seen in most of the cases cited by our court in Garcia-Gonzales, especially in its footnote "3". Except for those situations involving a second offense, covered by the express terms of the statute, the cases involve sanctions imposed by professional licensing statutes under which regulating authorities have traditionally been accorded broad discretion in granting or withholding privileges to engage in pursuits believed to demand special qualifications and in the discipline of those who have been so engaged. In its footnote "2",[2] the court, in People v. Taylor, supra, pointed to these exceptional situations and emphasized that California statutes created certain exceptions to the application of the expungement statute and its benefits.[3]

2. "The Legislature has codified the exception to Penal Code, § 1203.4 with respect to drivers of motor vehicles, attorneys at law, physicians and surgeons, and public school teachers. The regulatory statutes concerning such persons subject them to disciplinary action for various causes including conviction of certain types of crimes. The amendments to these statutes provide that disciplinary action regularly taken thereunder shall not be affected by an order of release made pursuant to section 1203.4. Section 309 of the Veh.Code, relating to the suspension or revocation of a license to drive a motor vehicle; section 6102 of the Bus. & Prof.

Code, concerning the suspension or revocation of a license to practice law; sections 2383 and 2384 of the Bus. & Prof. Code relating to discipline of a physician and surgeon; and sections 12011.5, 12011.7, 12107, 12756, 13001.3 and 14002.-3 of the Education Code, now §§ 12911, 12912, 13130, 13207, 13255, 13586, relating to the suspension and revocation of teachers' credentials and suspension and discharge of public school teachers.)"

3. In 1961, following the decision in People v. Taylor, supra, the expungement statute was amended so as to expressly provide that dismissal of an accusation or information under its terms should not be

Following the foregoing authorities, I would hold that if those who obtain the benefits of the expungement statute are thereby released from the disabilities of ineligibility to vote, the carrying of concealed firearms, and registration as one "convicted" of a morals offense, then one whose record of "conviction" is "wiped clean" should be released from the far more drastic disability of being subject to deportation and "banishment and exile" from his family and the land in which he lives.

I am of the conviction that, at the very least, the California statute, with its interpretation by the California courts, establishes a "doubt" which, said our court in Garcia-Gonzales, in its mention of the direction of Fong Haw Tan, "should be resolved in favor of the alien in deportation proceedings because of the severity of the remedy invoked."

Finally, we look at the opinion of the Attorney General upon which our court, in Garcia-Gonzales, and the majority here have so greatly relied, Matter of A——— F———, supra. The Attorney General has upheld the determination of the Immigration and Naturalization Service that expungement, under California law, of a record of any crime except one pertaining to narcotics saves the alien from deportation. The Attorney General, however, in disagreeing with the Board of Immigration Appeals, reasoned that narcotics offenders should be treated differently. Attempting to support this proposition, it was pointed out that in 1956, Congress amended Section 1251, Title 8, U.S.C., so as to provide that a narcotics offender should not be saved from deportation, as had formerly been the case, by the fact that he had been granted a pardon or by the fact that at the time of his conviction or within thirty days thereafter, the convicting court had recommended that he not be deported. I cannot agree with this particular reasoning of the Attorney General, and, significantly, it was not adopted in the majority opinion here or in the opinion in Garcia-Gonzales. It appears that the Congress intended that an alien should not benefit from a character of executive or judicial forgiveness which might be, and possibly had been, granted hastily and improvidently. The amendments, construed reasonably in favor of the alien, do not reach so far as to prohibit successful recourse to a state procedure dependent upon the successful meeting of probationary requirements with resulting clear evidence of rehabilitation and court review, not only of the history which was thought to justify probation in the beginning, but also of the subsequent conduct upon which would rest the order dismissing the original charge and releasing the alien from disabilities. The Attorney General says, "Moreover, to follow the Board's views would make the deportability of the alien depend upon the vagaries of state law." The majority gives controlling weight to this consideration, and in Garcia-Gonzales, our court somewhat deprecatingly referred to "all of the niceties and nuances of state laws." Inherent in our system are "vagaries" and "niceties and nuances" of state laws. One might find himself running afoul of the anti-gambling laws of many states and yet, for the same act, to have committed no crime in the state of Nevada. When the Attorney General writes that "only in California and a few other states is provision made * * * for the withdrawal of a plea of Guilty, upon the termination of probation.", it cannot follow that this pioneering of California and "a few other states" in the penal field is necessarily evil. Had the expungement statute, since its enactment nearly twenty-four years ago, not have proved to be an effective deterrent to recidivism, it is reasonable to assume that California would have repealed it. I cannot see that respecting the "vagary" of the California expungment statute as interpreted by the California courts is more grievous than the recognition of the "vagaries" and the "niceties and nuances" of different ap-

deemed to permit the ownership or possession of a firearm or to prevent conviction under Section 12021, California Penal Code.

.. 

plications of the same law with respect to different crimes and according to different opinions of the Board of Immigration Appeals and the Attorney General of the United States. If the Board and the Attorney General are to say, as they do, that an alien may be convicted in California of the most heinous crime and yet escape deportation by expungement of the record of that crime under the California law, then one who has been charged with possessing a marihuana cigarette should be spared from exile by consistent application of the same benevolent statute. Differing interpretations and applications of the California statute constitute, in sum, a trap for those unlearned in the "niceties and nuances" of the law.