Ioannis Georgios KOLIOS, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 75–1264.

United States Court of Appeals, First Circuit.

Argued Oct. 6, 1975.

Decided March 30, 1976.

---

1. No invasion of a house or other real property was involved in this case.

Ronald I. Bell, with whom Robert H. Goldman, and Goldman, Curtis, Cashman, Leahey & Latham, Lowell, Mass., were on brief for petitioner.

Robert E. Courtney, III, Atty., Dept. of Justice, with whom B. Franklin Taylor, Jr., Acting Chief, Government Regulations Section, Crim. Div., and James P. Morris, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Petitioner, a native and citizen of Greece, entered this country in 1968 as a lawful immigrant. In 1972, at 20 years of age, while serving in the armed forces of the United States, he pleaded guilty to selling marijuana in violation of Texas law, and was sentenced to five years in prison. Imposition of sentence was suspended and petitioner was placed on probation. In 1973, he was found deportable under 8 U.S.C. § 1251(a)(11), which provides for the deportation of an alien who, *inter alia,* "has been convicted of a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marijuana". However, he had not yet been deported when, in 1975, he fulfilled his conditions of probation and his conviction was set aside by the Texas court. Petitioner thereupon took his case to the Board of Immigration Appeals, urging reversal on the ground that he was no longer "convicted" within the meaning of the Immigration and Nationality Act. The Board rejected this contention and the instant petition for review followed.

The judicial precedents, as petitioner recognizes, support the Board's decision.[1] They stem from the Attorney General's ruling in *Matter of A— F—,* 8 I. & N. Dec. 429 (1959) (dictum). Prior to that decision, state expungement statutes were traditionally given effect by the Board of Immigration Appeals, both as to expungement of crimes involving moral turpitude (§ 1251(a)(4)), and as to narcotics offenses (§ 1251(a)(11)).[2] But in 1956 Congress had amended § 1251(b), under which deportation for crimes involving moral turpitude could be avoided by an executive pardon or by a judicial recommendation against deportation made at or within 30 days after the time of sentencing, to make it clear that

---

1. *See, e. g., Gonzales de Lara v. United States,* 439 F.2d 1316 (5th Cir. 1971); *Cruz-Martinez v. INS,* 404 F.2d 1198 (9th Cir. 1968), *cert. denied,* 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491 (1969); *Kelly v. INS,* 349 F.2d 473 (9th Cir.), *cert. denied,* 382 U.S. 932, 86 S.Ct. 326, 15 L.Ed.2d 344 (1965); *Garcia-Gonzales v. INS,* 344 F.2d 804 (9th Cir.), *cert. denied,* 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965). *See generally* C. Gordon & H. Rosenfield, Immigration Law and Procedure, § 4.17 and notes 22–23c (October 1975 Supp.).

2. See the decisions cited by the Board in *Matter of A— F—, supra.*

the section was inapplicable to the narcotics offenses described in § 1251(a)(11).[3] The Attorney General reasoned that the progressive strengthening of deportation laws affecting aliens involved in narcotics,[4] capped by the 1956 amendment, evidenced a national policy which would no longer permit such a flexible interpretation of "convicted" as to recognize a subsequent expungement under state procedures having nothing to do with the merits. He also noted that his view would avoid making deportability depend upon the fortuity of a state expungement law. For 17 years this rationale has been accepted by judicial decision, with no contrary action on the part of Congress.

Petitioner, however, presents a sympathetic case. He is young. His crime appears to have been near the minimum in the drug spectrum. He so conducted himself while under probation that the Texas court set aside his conviction and dismissed the

indictment against him. Under Texas law this meant that for most purposes the conviction became nonexistent.[5] He questions why he should be deported when someone convicted of a crime of moral turpitude could avoid deportation by obtaining the same order of expungement.[6] He also notes that had he been convicted for a narcotics offense under federal law and dealt with under the Federal Youth Corrections Act, he would not be deported following expungement, *Mestre Morera v. INS*, 462 F.2d 1030 (1st Cir. 1972); *Matter of Zingis*, 14 I. & N.Dec. __ (I.D.2270) (B.I.A. 1974). Further, the Service now accords recognition to state expungements of marijuana offenders treated and expunged under state juvenile statutes, *Matter of Andrade*, 14 I. & N.Dec. __ (I.D.2276) (B.I.A. 1974). In light of the currently ambivalent community and Congressional attitudes toward minor marijuana offenses, *see* 21 U.S.C. §§ 186, 844 (1970), the policy of

**3.** 8 U.S.C. § 1251(b) provides:
 "The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, or (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section."

**4.** The Alien Registration Act of 1940, 54 Stat. 673, had amended the provision for deportation of alien narcotics offenders to (1) eliminate the requirement of a sentence upon the conviction, and (2) encompass convictions of state, as well as federal narcotic laws.

**5.** ". . . Upon the satisfactory fulfillment of the conditions of probation, and the expiration of the period of probation, the court, . . . shall discharge the defendant. . . . [S]uch court may set aside the verdict or permit the

defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty, except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense." Texas Code Crim.Proc.Ann. art. 42.12, § 7 (Vernon 1966).

**6.** The Board and the Attorney General have continued to recognize the effect of expungements under § 1251(a)(4), *Matter of G__*, 9 I. & N. Dec. 159 (A.G.1961). This accords with the tenor of § 1251(b): *see* Comment, 114 U.Pa.L. Rev. 372 (1966). However, the decisions cited in note 1, *supra,* rely less upon this distinction than upon perceptions (1) of a need to avoid vagaries of different state post-conviction laws and (2) that such statutes do not really affect the validity of the conviction. Accordingly, there have been rulings that state expungement statutes are ineffective for deportation purposes under § 1251(a)(4), *Burr v. INS*, 350 F.2d 87 (9th Cir. 1965) (rejected by the Board and the Attorney General in *Matter of Ibarro-Obando*, 12 I. & N. Dec. 576 (A.G.1967)), and under § 1251(a)(14) (violation of laws relating to automatic and semi-automatic weapons or sawed-off shotguns), *Gutierrez-Rubio v. INS*, 453 F.2d 1243 (5th Cir. 1972).

construing deportation laws strictly against deportability, *Barber v. Gonzales*, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954), and the legitimate goal of stimulating rehabilitation behind any expungement statute, he contends that the time has come to ameliorate the harshness of the rule initiated by the 1959 opinion of the Attorney General.

■ Recognizing the force of the argument, and of our brother's dissent, we nevertheless must start with the proposition that deportation is a matter of Congressional policy, *Kleindienst v. Mandel*, 408 U.S. 753, 766–67, 92 S.Ct. 2576, 2583–84, 33 L.Ed.2d 683, 693–94 (1972). In *Mestre Morera, supra,* we held that the Congressional policy of deportation for narcotics offenders conflicted with another Congressional policy of rehabilitation for young offenders whose convictions were erased under the Federal Youth Corrections Act.[7] Finding no express preclusion of such erasure as a defense to deportation, we held that Congress must have intended the FYCA expungement provisions to be fully effective even after the 1956 amendment of § 1251(b) which closed the doors of pardon and judicial recommendation against deportation to

drug offenders.[8] We said that if Congress had intended such expungement to be "inoperative with respect to section (a)(11), it would have expressly said so."

The doctrine of *Mestre Morera* has been extended by the Board of Immigration Appeals to orders effecting erasure of minor marijuana convictions under state juvenile laws. This practice is consistent with the Congressional policy, at least as interpreted by *Mestre Morera,* that statutory schemes aiming at the rehabilitation of youthful offenders should be given full effect.[9]

To go beyond this point and recognize other expungement statutes as barriers to deportation is, we think, to go beyond the Congressional policy evidenced by its excepting narcotics offenses from the saving effects of a pardon or a judicial recommendation against deportation. One can argue that neither judicial recommendations nor many pardons purport to set aside convictions, that they are motivated as much by mercy as by rehabilitation, and that successful invocation of an expungement statute necessarily implies satisfactory completion of a term of probation—concrete evidence of rehabilitation. Yet a pardon by

7. We noted that the federal act was more than a "technical erasure", and did more to free the defendant from all taint of conviction than the mere restoration of his civil rights, citing *Tatum v. United States,* 114 U.S.App.D.C. 49, 310 F.2d 854 (D.C.Cir.1962). By contrast, the state statutes generally, including the one in question, purport basically to simply restore civil rights by releasing the defendant from the "penalties and disabilities" of his conviction.

The Texas statute involved here provides that the conviction be made known to the court if the defendant is convicted of another crime. According to annotation 26.5 to this statute, the Texas Attorney General, in opinions No. M–640 (1970) and No. M–795 (1971), interprets the expungement to restore civil rights such as the right to vote and to be a juror, but not to allow the defendant to state on an application for employment that he has never been convicted.

Some expungement statutes are even less effective. For example, the California statute at issue in *Garcia-Gonzales, supra* note 1, appears to have been hedged with numerous exceptions. A Louisiana statute allows use of the conviction for recidivist purposes, *see Matter of Cruzado,* 14 I. & N. Dec. __ (I.D.2252)

(B.I.A.1973). *But see Tsimbidy-Rochu v. INS,* 414 F.2d 797 (9th Cir. 1969), refusing to respect a Nevada statute without any indications that such exceptions exist.

8. We recognized that deference to the Congressional policy of deportation of aliens involved in narcotics traffic might be more compelling "when the expunction is of a state conviction under an unusual state procedure", citing some of the authorities in note 1, *supra*, and *Matter of A__ F__, supra*, but felt that the Youth Corrections Act, contemplating more than a "technical erasure", had expressed a Congressional concern of equal strength to that of its concern with narcotics. 462 F.2d at 1032.

9. This is particularly appropriate in view of the fact that when the underlying facts of a case involve violations of both state and federal law, and surrender to state juvenile authorities is being contemplated under 18 U.S.C. § 5001, "it is generally the practice that the less serious offenses are handled by state prosecution, and that federal prosecutions are reserved for the more serious offenses." *Matter of Andrade,* 14 I. & N. Dec. __ (I.D.2276) (B.I.A.1974), App. at 11 (letter of U. S. Solicitor General Bork).

the President or a Governor is a solemn and deliberate act by the highest official of the nation or a state. And a judicial recommendation against deportation, after representations from prosecution and immigration officials, is another deliberate and focused action. That such actions should be unavailing to forestall deportation while orders of expungement in whole classes of like cases following successful completion of probationary terms would suffice seems to us to draw too fine a line.

We note also the blanket nature of state expungement statutes. As is true of the statute in this case, the narcotics offense could range from simple possession of marijuana to wholesale distribution of hard drugs. So long as the trial judge deems probation appropriate, expungement is a possibility. Yet Congress, when it has moved to ameliorate sanctions in narcotics cases, has taken a selective approach. In its 1970 amendment to 21 U.S.C. § 844, it provided for the possibility of expungement, but limited the possibility to cases of simple possession of a controlled substance, and provided more complete expungement for young offenders. Counsel have provided us with bills introduced into the current 94th Congress which seek with similar precision to exclude as bases for deportation convictions for possession of marijuana or for distribution of a small amount of marijuana for no remuneration.[10] It seems highly unlikely to us that Congress, which has narrowly confined the scope of expungement of conviction in federal drug cases, would contemplate that state expungement stat-

utes of general applicability could insulate any narcotics offender from the sanction of deportation.[11]

 Were we dealing with the amendment to § 1251(b) as a new statute, we might feel free to give greater weight to the principle of strictly construing a deportation provision. But the amendment has been on the books for twenty years; judicial and administrative interpretations, although not many, have been consistent; and such amelioration of sanctions as Congress has allowed for federal drug offenders has been narrowly defined. We conclude, not without some hesitancy, that relief in such cases as this is properly a matter for the Congress. We add our own view that some flexibility would appear to be desirable; automatic deportation of all drug offenders, despite conviction for a minor offense, satisfactory completion of a probationary term, and erasure of the conviction by the concerned state, would seem to serve no national interest.

*The petition for review is denied.*

McENTEE, Circuit Judge (dissenting).

While not discounting the persuasiveness of the majority's opinion in this case I nonetheless must dissent. This case is a difficult one—in terms both of its human dimensions and of the problems of statutory construction which it involves. While I have striven to avoid permitting the sympathetic aspects of petitioner's situation to control, I have been influenced in my approach to the statutory language by the consistent line of Supreme Court decisions which hold that in

10. H.R. 223 (Rep. Bingham) would add to the last sentence of § 1251(b) an exception for convictions of possession of marijuana or its distribution in a small amount for no remuneration, and would allow an Attorney General waiver of deportation in such cases. H.R. 567 (Rep. Koch) would add a subsection to § 1251(b) allowing the Attorney General to waive deportation under § 1251(a)(11) for convictions for possession of marijuana. H.R. 2592 (Rep. Koch) would provide that § 1251(a)(11) not apply to convictions for possession of marijuana or the distribution of a small amount of marijuana for no remuneration, or for certain instances of simple possession of controlled substances. S. 448 (Sen.

Cranston) would add to the last sentence of § 1251(b) an exception for an alien deportable under § 1251(a)(11) for a conviction of the possession of marijuana, or its distribution in a small amount for no remuneration, if the alien has an immediate relative living in the United States and the Attorney General waives deportation.

11. A closer question would be posed if a young offender's state conviction for simple possession had been expunged. In such a case it could be argued that he should be treated no more harshly than he would have been under 21 U.S.C. § 844.

deciding whether a given statute requires the deportation[1] of an alien, doubts as to the correct construction of the statute should be resolved in the alien's favor. "[S]ince the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used." *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433, 436 (1948). *See also Immigration and Naturalization Service v. Errico,* 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318, 326 (1966); *Barber v. Gonzales,* 347 U.S. 637, 642, 74 S.Ct. 822, 825, 98 L.Ed. 1009, 1013 (1954). *Cf. Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J.)

The statute we must construe here does not directly address the situation of state expunction laws. While Congress specifically closed off the avenues of pardon and judicial recommendation against deportation to drug offenders, it said nothing about the effect of expunctions under state law (or about federal expunction under the Youth Correction Act [YCA]). In *Mestre Morera v. INS,* 462 F.2d 1030 (1st Cir. 1972) we followed the rule of strict construction and held that if Congress had intended federal YCA expunction to be inoperative from barring deportation it would have expressly said so. I believe a similarly strict construction is mandated here. We also noted in *Mestre Morera* that Congress through the Youth Correction Act, had expressed a "concern, which we cannot say to be any less strong than its concern with narcotics, that juvenile offenders be afforded an opportunity to atone for their youthful indiscretions."[2] 462 F.2d at 1032. The fact that Congress chose to intertwine the criminal justice systems of the states with deportation decisions in no way alters its clearly manifest concern with rehabilitation.

Furthermore, I do not share the majority's concern over the possible non-uniformity which might result from giving effect to the rehabilitative purposes of state expunction laws. In this as in other areas Congress has frequently made federal laws dependent on state statutes, *see, e. g.,* 18 U.S.C. App. § 1202(c)(2); *see also* 18 U.S.C. § 1955(b)(1)(i). Congress has clearly bargained for and manifested an acceptance of the variety that necessarily flows from making deportation dependent on state convictions. Since Congress knew of the existence of state expunction provisions and the fact of their diversity, it could hardly have been unaware that such statutes might have a different scope than comparable federal provisions. Hence, I think we should be reluctant to strain toward uniformity where Congress has clearly countenanced variety through a system which partially relies on state laws. Such a system necessarily must involve "sensitivity to the legitimate interests of both State and National Governments, and . . . the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, [should] always endeavor . . . to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669, 676 (1971).

*I dissent.*

---

1. The consequences of deportation are often very grave for the individual involved. Deportation may result in the loss "of all that makes life worth living." *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938, 943 (1922) (Brandeis, J.). It can be the equivalent of banishment or exile. *Delgadillo v. Carmichael,* 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17, 19 (1947).

2. As the majority correctly notes, had petitioner been convicted of a narcotics offense under federal law and dealt with under the Federal Youth Corrections Act (for which he would have been eligible, see 18 U.S.C. § 5006(e)) he would not be deported following expunction.