**Shaheen REHMAN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA- TION SERVICE, Respondent.**

**No. 153, Docket 76–4022.**

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1976.

Decided Oct. 14, 1976.

---

Vincent A. O'Neil, Syracuse, N. Y. (Costello, Cooney & Fearon, Syracuse, N. Y., on the brief), for petitioner.

Mary P. Maguire, Sp. Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., Southern District of New York, and Thomas H. Belote, Sp. Asst. U. S. Atty., New York City, on the brief), for respondent.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Pursuant to 8 U.S.C. § 1105a, Shaheen Rehman petitions for review of an order of deportation entered November 17, 1975 by the Board of Immigration Appeals. Rehman was found deportable under 8 U.S.C. § 1251(a)(11) by virtue of his conviction in a New York court for illegal possession of marijuana. Before us, as before the Board, he argues that because his marijuana conviction was accompanied by a certificate of relief from disabilities, he has not been "convicted" within the meaning of § 1251(a)(11). We agree.

Rehman, a native and citizen of Pakistan, last entered the United States on January 17, 1974 as a nonimmigrant student authorized to remain until May 31, 1975. At the airport, however, he was found to be in possession of hashish; and on March 29, 1974 before Judge Roth of the New York City Criminal Court in Queens County, he pleaded guilty to criminal possession of a controlled substance in the seventh degree, N.Y. Penal Law § 220.23 (McKinney Supp. 1975). Seventh degree possession is simple knowing possession and is New York's lowest grade drug offense. A 22-year old graduate student at Syracuse University with good character references, Rehman was sentenced to a conditional discharge for one year and fined one hundred dollars. At the same time, the judge granted him a temporary "Certificate of Relief from Disabilities" to become final on March 29, 1975.

In February 1975 the Immigration and Naturalization Service commenced deportation proceedings. After a hearing on March 11, 1975, an Immigration Judge found Rehman subject to mandatory deportation under § 1251(a)(11) by virtue of his conviction; and the Board dismissed Rehman's appeal.

Construction of a term in a federal immigration statute is an issue of federal

law. Accordingly, neither the name by which a state chooses to refer to a particular disposition nor the deportation consequence that a state might wish to assign is necessarily determinative of whether a defendant has been "convicted" for purposes of § 1251(a)(11). Rather, we must interpret this section in accordance with Congressional intent. Of course, merely by turning to state sanctions as a trigger for the deportation process, Congress brings into play to some extent each state's own system of criminal justice.

█ Deportation here would be contrary to the purposes of New York law. New York Correction Law § 701 provides that a recipient of a certificate of relief from disabilities shall not suffer "*automatic* forfeiture of any other right or privilege" (emphasis supplied) by virtue of his conviction.[1] It does not prevent any judicial or adminis-

trative authority from relying on the conviction as a basis for the exercise of a "*discretionary* power to suspend, revoke, [or] refuse to issue . . . any license, permit or other authority or privilege" (emphasis supplied).[2] By freeing the offender from automatic forfeitures while leaving him subject to discretionary ones, § 701 is designed to ensure that the conviction will not trigger legal consequences from which there is no chance of an appeal in which equities of the individual case can be considered.[3] Deportation under § 1251(a)(11) is of exactly this mandatory character. See, e. g., *Guan Chow Tok v. INS,* 538 F.2d 36, 38 (2d Cir. 1976). Deportation also renders § 701's relief from other disabilities largely moot. Hence, it seems clear to us that the New York legislature could not have intended that recipients of § 701 certificates would remain subject to mandatory deportation.[4]

1. Rehman's sentencing judge granted him the fullest relief possible under § 701, which reads:

 1. A certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein. Such certificate may be limited to one or more enumerated forfeitures, disabilities or bars, or may relieve the eligible offender of all forfeitures, disabilities and bars. Provided, however, that no such certificate shall apply, or be construed so as to apply, to the right of such person to retain or to be eligible for public office.

 2. Notwithstanding any other provision of law, a conviction of a crime or of an offense specified in a certificate of relief from disabilities shall not cause automatic forfeiture of any license, permit, employment or franchise, including the right to register for or vote at an election, or automatic forfeiture of any other right or privilege, held by the eligible offender and covered by the certificate. Nor shall such conviction be deemed to be a conviction within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege, covered by the certificate.

 3. A certificate of relief from disabilities shall not, however, in any way prevent any

judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege.

The exception for the right to hold public office in paragraph 1 has no relevance in a drug case. Although in the past, some crimes of political corruption resulted in forfeiture of or permanent disqualification from public office, New York's 1967 recodification of the penal code eliminated such sanctions. Compare N.Y. Penal Law of 1909, §§ 1832(1), 1839, 1854, 1875 (forfeitures) & §§ 1823, 1833, 1864, 1879(3) (permanent disqualifications) with N.Y. Penal Law arts. 60, 195, 200 (McKinney 1975). Consequently, the only disqualification provision still remaining is N.Y. Pub. Officers Law § 3(1) (McKinney Supp.1975), which prohibits office holding by selective service violators.

2. See, e. g., *In re Arroya,* 50 A.D.2d 752, 376 N.Y.S.2d 158 (1975).

3. See Governor's Memorandum Approval of L.1966, c. 654 in McKinney's 1966 Session Laws of New York at 3003: "It is an important step beyond the previous system of automatic, indirect sanctions following upon a conviction without regard to the merits of the individual involved."

4. In reaching a contrary conclusion our brother Mulligan relies on *In re Sugarman,* 51 A.D.2d

Of course, the state does not have full discretion as to the deportation consequences to someone convicted of a state drug crime. If an alien has been convicted of a crime involving moral turpitude, under 8 U.S.C. § 1251(b) an executive pardon or a judicial recommendation against deportability will protect him from deportation. Section 1251(b) specifically provides, however, that executive pardons and judicial recommendations against deportability will *not* suffice to protect drug offenders. Thus, Congress has exhibited a strict attitude regarding deportation of convicted drug criminals. See also *Bronsztejn v. INS*, 526 F.2d 1290 (2d Cir. 1975).

Nonetheless, if Rehman had been tried on federal charges rather than on New York state charges, he would most likely not now be deportable, for two independent reasons. First, under 21 U.S.C. § 844 a first-offender guilty of simple possession of drugs can in the discretion of the court be placed on probation and never actually be convicted at all. Hence, he would have no "conviction" for which to be deported. Second, under 18 U.S.C. § 4209 a "young adult offender" (under twenty-six years of age at the time of conviction) can in the discretion of the court be sentenced under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005– 26, which in turn allows for expungement of the conviction after satisfactory completion of probation, id. § 5021. The INS recognizes such expungements for deportation purposes, *Matter of Singis*, Interim Dec. 2270 (B.I.A.1974); see also *Mestre Morera v. INS*, 462 F.2d 1030 (1st Cir. 1972), and grants the same recognition to state juvenile statutes, *Matter of Andrade*, Interim Dec. 2276 (B.I.A.1974).

 If the word "conviction" is to be construed rigidly, Rehman must be deported since his New York "conviction" still stands under New York law.[5] We think, however, that a less formalistic approach is appropriate [6] and more consistent with Congressional intent. So far as any automatic collateral consequences are concerned, Rehman has not been "convicted" under New York law. There is no sound reason why state policies should not be accorded the same respect as federal leniency policies would receive under the same circumstanc-

170, 380 N.Y.S.2d 12 (1976), in which a panel of the appellate division held that a certificate of relief from disabilities granted by a parole board at the end of several years imprisonment did not relieve the recipient from the automatic disbarment which follows under New York law upon a felony conviction. There are a number of reasons why Judge Mulligan's reliance on that decision is misplaced.

First, it is central to the *Sugarman* opinion that the certificate there was granted by an administrative board rather than a court. Emphasizing the importance of a judiciary's control over the regulation of its bar, the *Sugarman* court concluded that the legislature could not have intended to delegate to a nonjudicial body the power to reinstate a previously disqualified lawyer. This reasoning is inapposite where, as here, the certificate has been issued by a judge.

Second, the certificate in *Sugarman* was not issued contemporaneously with the conviction. Thus, there was no argument to be made in that case that the granting of the certificate and the entering of the conviction were part and parcel of one adjudicative act.

Third, disbarment follows only after conviction of a *felony*. N.Y. Judiciary Law § 90, subd. 4 (McKinney 1968). Since commission of a felony is a far more serious blot on a person's character than commission of a misdemeanor, the willingness of the New York legislature to have felony convictions trigger automatic collateral consequences does not imply that it desires the same for misdemeanor convictions.

Fourth, there is every reason for the legislature to conclude that automatic disbarment of felons is necessary to preserve public confidence in the bar and that this consideration overrides the need for clemency in individual cases. By contrast, in adopting 21 U.S.C. § 844 and 18 U.S.C. §§ 4209, 5021, discussed below, Congress has made clear that it does not believe young drug offenders need to be deported in every case. Thus, Congress has implied that the public interest in the deportation of narcotics criminals should *not* override the need for individualized clemency in cases like Rehman's.

5. "The granting of a certificate of relief from disabilities in no way eradicates or expunges the underlying conviction." *Da Grossa v. Goodman*, 72 Misc.2d 806, 339 N.Y.S.2d 502, 505 (Sup.Ct.1972).

6. Deportation statutes are to be strictly construed against the INS. *Barber v. Gonzales*, 347 U.S. 637, 642 (1954); *Lennon v. INS*, 527 F.2d 187, 193 (2d Cir. 1975).

es. Where state judicial relief from disabilities is clearly intended to prevent mandatory deportation, and full expungement of a federal conviction would have been available in an analogous case, the offender should be held not to have been "convicted" for purposes of § 1251(a)(11).[7] This is not an unduly burdensome determination for the INS to have to make. It will result in a more uniform substantive application of federal law; deportation will not be triggered by minor differences and fortuitous technicalities in state laws.[8]

We realize that three other Circuits have ruled to the contrary. *Kolios v. INS,* 532 F.2d 786 (1st Cir. 1976) (2–1 decision), cert. denied, —— U.S. ——, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976) (No. 1685); *Gonzalez de Lara v. United States,* 439 F.2d 1316 (5th Cir. 1971); *Cruz-Martinez v. INS,* 404 F.2d 1198 (9th Cir. 1968), cert. denied, 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491 (1969). In each of these cases the defendant was under twenty-six; i.e., he, like Rehman, could have been eligible for expungement under the Federal Youth Corrections Act. Also, *Gonzalez de Lara* involved possession of marijuana, a crime for which probation without conviction could have been available under 21 U.S.C. § 844 (enacted in 1970). Thus, these precedents do implicitly support the INS's position in the instant case. Except in the *Kolios* opinion, however, no mention was made of the available federal analogs to the state leniency statutes.

The reasoning of these other courts has been that "it would defeat the purpose[s] . . . [of federal law] if provisions of local law, dealing with rehabilitation of convicted persons, could remove them from the ambit of [federal penal enactments]" (brackets in original). *Gonzalez de Lara v. United States,* supra at 1318–19, quoting *Cruz-Martinez v. INS,* supra at 1199. Yet, where mandatory deportation would frustrate the purposes of a state's relief statute, and federal law provides for erasure of federal convictions under circumstances identical to those of the case at issue, it seems to us that the state's leniency policy can be respected without fear of undermining enforcement of federal deportation laws. States' freedom to remove persons from the ambit of deportation law would extend no further than where Congress itself has gone for federal criminals.

The deportation order is set aside.

MANSFIELD, Circuit Judge (concurring):

I concur in Judge Lumbard's carefully considered opinion. I would only add that in my view, even if the term "convicted" as used in 8 U.S.C. § 1251(a)(11) were construed to embrace state judgments which are later expunged, the simultaneous issuance of the Certificate of Relief from Disabilities prevents the state court's adjudication of guilt from amounting to a conviction. Thus, I believe that even under a "formalistic" construction of the statutes at issue, as distinguished from the liberal interpretation in favor of an alien which is mandated, *Lennon v. I.N.S.,* 527 F.2d 187 (2d Cir. 1975), the order of deportation must be set aside.

In dealing with possession of a drug such as marijuana for personal use (as distinguished from sale), the New York Legislature had numerous alternatives open to it.

---

7. The INS also argues that because Rehman's relief from disabilities was conditioned on his satisfactory completion of one year's probation, the relief was not contemporaneous with his conviction and therefore cannot be deemed to have expunged the conviction for purposes of § 1251(a)(11). However, since § 1251(a)(11) tolerates federal expungements under 21 U.S.C. § 844 and 18 U.S.C. § 5021 which are themselves probational, we see no reason why the mere existence of a probationary period should be a bar to the expungement of a state conviction.

8. Of course, by necessity this means that in some instances persons who have been treated identically by state courts can be treated differently by the INS. For example, a person over 26 years old who is convicted of a drug offense more serious than simple possession could never avoid deportation even though under New York law his sentencing judge would have discretion to grant him a certificate of relief from disabilities just like Rehman's.

It could have chosen not to make the possession a crime at all, in which event the absence of any conviction would preclude the I.N.S. from invoking § 1251(a)(11). Alternatively the Legislature could have provided civil NARA-type[1] relief only, which would not trigger the deportation statute. Taking a different course, the State might have made the conduct a crime and provided that a person found guilty would stand convicted, either unqualifiedly or subject to later expungement of the conviction if he successfully satisfied a period of probation. See, e. g., *Kolios v. I.N.S.*, 532 F.2d 786 (1st Cir. 1976), —— U.S. ——, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976).

As one other alternative, the Legislature was entitled to provide that under certain circumstances the adjudication of guilty would not be given the effect of a "conviction." This it chose to do by enacting New York Correction Law § 701(2), which provides that a "conviction of a crime or offense specified in a certificate of relief from disabilities shall not cause automatic forfeiture of any . . . right or privilege, held by the eligible offender and covered by the certificate" and goes on to state:

> "*Nor shall such conviction be deemed to be a conviction* within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege, covered by the certificate." (Emphasis added)

Since a Certificate of Relief from Disabilities was issued to Rehman simultaneously with the entry of judgment upon his guilty plea, the adjudication of guilt cannot "be deemed to be a conviction" for the purposes of the deportation statute.[2] The State Legislature clearly did not intend such an adjudication to have either the label or the effect of a "conviction," nor is there any indication that Congress in enacting § 1251(a)(11) intended the term "convicted" to be so all-embracing. Instead, the federal statute is simply keyed to *unqualified* convictions, state or federal.[3]

The decisions in *Kolios v. I. N. S.*, 532 F.2d 786 (1st Cir. 1976), *petition for cert. filed*, 44 U.S.L.W. 3724 (May 20, 1976); *Gonzalez de Lara v. United States*, 439 F.2d 1316 (5th Cir. 1971); *Cruz-Martinez v. I. N. S.*, 404 F.2d 1198 (9th Cir. 1968), *cert. denied*, 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491 (1969), so heavily relied on by the government, are clearly distinguishable. In those cases there was a conviction which remained in full force and effect for a substantial period of time, subject to the possibility of expungement if the defendant should successfully serve a period of probation. Here, on the contrary, in view of the simultaneous issuance of the Certificate, the adjudication never had the effect of a conviction for certain purposes (including deportation) and there never was any revocation or modification of that Certificate. As a result Rehman never stood "convicted" in my view and hence may not be deported under § 1251(a)(11). This interpretation of the term "convicted" as used in § 1251(a)(11), moreover, is in keeping with Congress' more recently enunciated policy of reducing hardships and sanctions imposed upon youthful offenders. See *Mestre*

1. Under the provisions of the Narcotic Addict Rehabilitation Act of 1966, 28 U.S.C. § 2902, a federal district court may hold in abeyance the prosecution of a criminal charge against a suspected drug addict if the suspected addict submits to an examination to determine whether he can be rehabilitated. Upon the successful completion of a program of treatment, the court is required to dismiss the charges.

2. In effect the Legislature's action was similar to that of Congress in enacting the Narcotic Addict Rehabilitation Act of 1966, which defines the terms "conviction" and "convicted" to exclude "a final judgment which has been expunged by pardon, reversed, set aside, or *otherwise rendered nugatory*" (emphasis added), 18 U.S.C. § 4251(e), 28 U.S.C. § 2901(f).

3. Although Congress clearly has power to make an all-inclusive deportation statute, it has not done so. As was held in *Holzapfel v. Wyrsch*, 259 F.2d 890, 891 (3d Cir. 1958), "In deportation cases where a state crime is involved we have to look to the law and procedure of the state to interpret what happened in the state courts."

*Morera v. I. N. S.*, 462 F.2d 1030, 1032 (1st Cir. 1972).

MULLIGAN, Circuit Judge (dissenting):

Shaheen Rehman, an alien admitted as a non-immigrant student authorized to remain in the United States with that status only until May 31, 1975, pleaded guilty and was convicted of the illegal possession of marijuana in the Supreme Court of the State of New York on March 29, 1974. His deportation has been ordered by an Immigration Judge and on review that determination has been affirmed by the Board of Immigration Appeals. In view of the plain and unambiguous language of 8 U.S.C. § 1251(a)(11)[1] the Board had no other choice; petitioner's deportation is mandated by the statute and the majority decision here reversing the Board is indefensible and compels dissent.

There can be no question that Rehman's state conviction still stands. In *Da Grossa v. Goodman*, 72 Misc.2d 806, 339 N.Y.S.2d 502, 505 (Sup.Ct.1972), the court specifically said, "The granting of a certificate of relief from disabilities in no way eradicates or expunges the underlying conviction." Thus it is clear that the "Certificate of Relief from Disabilities" provided by the New York Correction Law § 700 *et seq.* and set forth in footnote 1 of the majority opinion does not purport to expunge his conviction, but simply to relieve him of certain disabilities flowing therefrom. By some process of

reasoning which I fail to understand, the majority finds that, "it seems clear to us that the New York legislature could not have intended that recipients of § 701 certificates would remain subject to mandatory deportation." We are obviously bound by the New York State Courts' construction of a New York statute. In *Da Grossa v. Goodman, supra,* the court announced, "Those disabilities which are relieved upon the granting of the certificate are disabilities imposed upon New York citizens by the action of specific *New York Statutes.*"[2] (emphasis supplied). The majority statement that deportation is "contrary to the purposes of New York law" is erroneous and irrelevant.

Aside from the construction of the statute by the New York court, it seems basic that a state legislature has no power or authority to determine conditions or terms of deportation. It is the Congress which has plenary power to determine the eligibility of the alien to enter and to remain in the United States. *Kleindienst v. Mandel,* 408 U.S. 753, 766–67, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954). The Congress has spoken in unequivocal language in section 1251(a)(11) and the intent of the New York State Legislature is totally irrelevant. In any event, the State, as we have indicated, only intended to relieve the disabilities which its law had imposed and was as powerless to legislate in the field of immigration as it

---

1. That statute provides in part:
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
 (11) . . . at any time has been convicted of a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana
 . . . . .
 8 U.S.C. § 1251(a)(11).

2. In *Matter of Sugarman*, 51 A.D.2d 170, 380 N.Y.S.2d 12 (1st Dep't 1976), the court held that an attorney convicted of a felony would not be re-admitted to the bar upon receipt of a certificate of disability. In so holding, the court noted, "that even the *certificate of relief from disabilities is not a complete relief from disabilities.* The statute itself contemplates

certain rights which the certificate cannot restore, such as the right to hold public office." *Id.* at 14. See also *In re Arroya,* 50 A.D.2d 752, 376 N.Y.S.2d 158 (1st Dep't 1975).

Judge Lumbard's opinion points out that in *Sugarman* the certificate there was issued by an administrative agency, the Parole Board, rather than a judge. However, the certificate is the same whether issued by either. Correction Law §§ 701–03; see Governor's Memorandum Approval of L.1966, c. 654 in McKinney's 1966 Sessions Laws New York at 3003. While the defendant was convicted of a felony in *Sugarman* there is nothing in that opinion or in the New York Statute to suggest any difference between the conviction for a felony or a lesser offense so long as the defendant is a first offender.

would be to repeal the law of the Medes and the Persians.

Every federal court which has encountered the question of the effect of a state expungement statute upon the deportation of an alien convicted of a drug offense in a state court has held that the state conviction per se triggers 8 U.S.C. § 1251(a)(11) and that the state's subsequent treatment of the offender is inconsequential. *Kolios v. INS,* 532 F.2d 786 (1st Cir. 1976), cert. denied —— U.S. ——, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976); *Gonzalez de Lara v. United States,* 439 F.2d 1316 (5th Cir. 1971); *Tsimbidy-Rochu v. INS,* 414 F.2d 797 (9th Cir. 1969); *Cruz-Martinez v. INS,* 404 F.2d 1198 (9th Cir. 1968), cert. denied, 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491 (1969); *Garcia-Gonzales v. INS,* 344 F.2d 804 (9th Cir.), cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965). See also *Aguilera-Enriquez v. INS,* 516 F.2d 565, 570 (6th Cir. 1975), cert. denied, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Will v. INS,* 447 F.2d 529, 531 (7th Cir. 1971).[3]

As the court in *Cruz-Martinez v. INS, supra,* 404 F.2d at 1200, stated:

> Deportation is a function of federal and not of state law. In the context of a narcotics conviction, deportation is a punishment independent from any that may or may not be imposed by the states. While it is true that the same event, the state conviction, triggers both sets of consequences, it would be anomalous for a

federal action based on a state conviction to be controlled by how the state chooses to subsequently treat the event. It is the fact of state conviction, not the manner of state punishment for that conviction, that is crucial.

The real issue, therefore, is the intent of Congress and not the intent of the New York Legislature. The language of section 1251(a)(11) is clear—the alien convicted of a violation of any law relating to the illicit possession of marijuana shall, upon the order of the Attorney General, be deported. In both *Kolios v. INS, supra,* and *Tsimbidy-Rochu v. INS, supra,* other circuits have upheld deportation orders even where state law expunged the prior state convictions. The New York statute does not erase the conviction but only state imposed disabilities flowing from that conviction. A fortiori, the ratio decidendi of these opinions is compelling here.

The majority argues that with respect to section 1251(a)(11) a "less formalistic approach is appropriate and more consistent with Congressional intent." However, earlier in its opinion the majority noted that "Congress has exhibited a strict attitude regarding deportation of convicted drug criminals." This Circuit has explicitly recognized the stringent congressional policy set forth in section 1251(a)(11). In *Bronsztejn v. INS,* 526 F.2d 1290 (2d Cir. 1975), we held that an alien convicted in a New York State court of an *attempt* to possess mari-

---

**3.** Judge Mansfield argues that these cases are inapposite because there was a state conviction in full force and effect for a substantial time while here the Certificate of Relief from Disabilities was issued simultaneously so that the adjudication never had the effect of a conviction for certain purposes including deportation. I do not understand how the issuance of the temporary certificate here transmogrifies Rehman's conviction into a non-conviction. Rehman pleaded guilty and he could not be sentenced even to a conditional discharge if he had not been convicted. New York Correction Law § 702(4) explicitly provides that when a certificate is awarded prior to the completion of the term for a suspended sentence, it shall be temporary and subject to revocation. Here the temporary certificate of March 29, 1974 would not become permanent until March 29, 1975

and his deportation was ordered on March 11, 1975. To permit deportation where permanent state relief from state convictions is predicated upon completion of a probationary period, *Kolios, supra,* and *Cruz-Martinez, supra,* but to deny it when the state court has granted the alien only conditional relief during the probationary period, is not logical. Those cases are distinguishable as Judge Mansfield states, but the distinction compels deportation here rather than the contrary. § 701(2) which provides that such conviction shall not be deemed a conviction of course is limited to those disabilities "covered by the certificate." As has been pointed out, that coverage can only be for those disabilities imposed by New York statutes, *Da Grossa v. Goodman, supra,* and deportation has not yet become the business of the State Legislature.

juana was nonetheless deportable because of the strict congressional policy in this area. That policy was recently recognized again by this Circuit in *Guan Chow Tok v. INS,* 538 F.2d 36, 38 (2d Cir. 1976) where we stated, "Congress' decision to mandate the deportation of narcotics offenders is not without rational justification; accordingly, while we may be concerned at the hardship it imposes on the minor offender, we must .nevertheless follow its strictures."

The attitude of Congress toward the drug offender is evident when we consider that if Rehman had been convicted of a crime involving moral turpitude, under section 1251(b) a full and unconditional pardon by the President of the United States or by a state governor, or a recommendation by the sentencing court to the Attorney General that the alien not be deported would have shielded him from deportation. However, as the majority itself points out, section 1251(b) specifically provides that executive pardons or judicial recommendations have no effect in the case of an alien convicted of a drug offense. As the First Circuit observed in *Kolios v. INS, supra,* 532 F.2d at 790, "It seems highly unlikely to us that Congress, which has narrowly confined the scope of expungement of conviction in federal drug cases, would contemplate that state expungement statutes of general applicability could insulate any narcotics offender from the sanction of deportation." The majority argument therefore that the congressional intent is somehow benevolent in these cases is, in my view, not supported by authority and in fact is contrary to the plain language of the statute.

The majority points out that if Rehman had been tried in a federal court on federal drug charges, he most likely would not be deportable since he might be given probation without a conviction or he might be given young offender treatment which permits expungement of the conviction. Of course, Rehman was convicted in a state court and speculation as to what his fate would be in a federal case hardly illumines the congressional intent expressed in section 1251(a)(11). There is authority for the

position that an alien sentenced under the Youth Correction Act, which permits expungement of his federal conviction, is not deportable. The First Circuit so held in *Mestre Morera v. INS,* 462 F.2d 1030 (1st Cir. 1972), stressing, however, that the congressional intention under the Youth Correction Act was to relieve the youth not only of the usual disabilities of a criminal conviction, but to completely expunge the record of conviction. The New York statute does not relieve all disabilities and does not expunge the conviction. Moreover, the same First Circuit subsequently rejected the argument now made by the majority here, when it denied a petition to review a Board decision deporting an alien convicted in a Texas court, even though the alien had fulfilled the conditions of his parole and his conviction had been set aside by the state court. *Kolios v. INS, supra,* 532 F.2d at 789.

The majority urges that its construction will lead to a more uniform application of federal law. On the contrary, the deportation of the alien drug offender will depend upon whether the convicting state provides for an expungement procedure. This hardly leads to consistent or uniform treatment but, as the Attorney General noted in *Matter of A___ F___,* 8 I. & N. Dec. 429, 446 (1959), would make the deportation of the alien depend upon the vagaries of state law.

It has been said that only in California and a few other States is provision made for the cancellation of a record of conviction or for the withdrawal of a plea of guilty, upon the termination of probation. *Probation and Related Measures* (U.N. Publication No. 1951, IV, 2) 106. And § 1203.4 of the California Penal Code (and presumably § 1772 of the California Welfare and Institutions Code) has been characterized as "without parallel in the legislation of any other state" in providing for a release of the probationer from all penalties and disabilities resulting from conviction. 2 Stan. Law Rev. 221, 222 (1949). It is hardly to be supposed that Congress intended, in providing for the deportation of aliens convicted of narcotic violations, to extend preferential

treatment to those convicted in the few jurisdictions, which, like California, provide for the expungement of a record of conviction upon the termination of probation.

Since the majority here stresses that Rehman is a graduate student with good character references and that his crime was "seventh degree" possession, New York's lowest grade of drug offense, it is obviously concerned about the harshness of the penalty of deportation meted out for the possession of hashish, an activity which some in the community believe should not constitute criminal behavior. However, that is a judgment properly to be made by the New York State Legislature and the Congress of the United States and not the federal judiciary.

While recognizing that deportation is a drastic penalty and that the statute must be strictly construed, *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948), this court in *Bronsztejn v. INS, supra,* 526 F.2d at 1291, noted, "[T]his Court has no authority to prevent deportation because of changing social mores regarding marijuana." In the guise of statutory interpretation, I believe the majority opinion here has contorted the plain and unambiguous terms of the congressional enactment to achieve what it deems a socially desirable result. However, "For purposes of judicial enforcement, the 'policy' of a statute should be drawn out of its terms, as nourished by their proper environment, and not, like nitrogen, out of the air." *D. A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 121–22, 66 S.Ct. 925, 931, 90 L.Ed. 1114 (1946) (Frankfurter, J., dissenting.)

In sum, the majority has ignored our own previous holdings that section 1251(a)(11) be strictly construed, as well as the uniform holdings of other circuits which have upheld deportation orders in comparable cases. The congressional intent is made clear from the statute and the cases in this and other circuits construing it. For seventeen years this consistent judicial interpretation has not been disturbed by the Congress. For the reasons given, I believe the position adopted by the majority here is not an interpretation of the congressional policy but, rather, its rejection.